UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Francisco Antonio Donaye-Contreras<br><br>Petitioner,<br><br>v.<br><br>Kristi Noem, in her Official Capacity, Secretary of the U.S. Department of Homeland Security;<br><br>Pamela Bondi, in her Official Capacity, Attorney General of the United States<br><br>Thomas Feeley, in his Official Capacity, Field Office Director for ICE's Enforcement and Removal Operations, Buffalo Federal Detention Facility, Batavia, New York<br><br>Joseph B. Edlow, Director of U.S. Citizenship and Immigration Services;<br><br>The GEO Group, Inc., Acting Director of the Buffalo Federal Detention Facility, Batavia, New York;<br><br>Respondents. | Case No.      (To be Assigned)<br><br>Judge: Hon. _____<br>Magistrate Judge: _____<br><br>No request for jury trial<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**ORAL ARGUMENT REQUESTED** |

      **COMES NOW**, Petitioner, Francisco Antonio Donaye-Contreras, brings this

Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief

pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality

Act ("INA") and regulations thereunder; the Administrative Procedure Act; and the Suspension

Clause of the Constitution, U.S. Const. Art. I § 9, cl. 2. The efforts to remove Petitioner constitute

a "severe restraint" on his individual liberty such that Petitioner is "in custody" of the Respondents

in violation of the . . . laws of the United States. *Hensley v. Municipal Court*, 411 U.S. 345, 351

(1973); 28 U.S.C. § 2241, including the Immigration Nationality Act, 8 U.S.C. § 1101 et seq.; the

1

Administrative Procedure Act, 5 U.S.C. § 701 et seq,; and the Due Process Clause of the Fifth Amendment of the United States Constitution.

1.    Petitioner has been physically detained by ICE since October 28, 2025 and is currently in removal proceedings before the Buffalo Immigration Court. He filed a motion for custody redetermination before the Executive Office for Immigration Review seeking a minimal bond to secure release. Although the Immigration Judge has not yet issued a decision, the motion is expected to be denied because the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), forecloses Immigration Judge jurisdiction to redetermine custody for noncitizens charged as removable under section 236(a)(1) of the INA. In light of *Yajure-Hurtado*, any further pursuit of administrative remedies would be futile, and no adequate or available remedy exists within the agency to challenge Petitioner's unlawful detention.

2.    Pursuant to this Court's inherent powers in habeas corpus proceedings, Petitioner Francisco Antonio Donaye-Contreras respectfully requests that this Court enjoin Respondents from effectuating his removal from the United States and order his immediate release from custody, or in the alternative, or enjoin Respondents from continuing to detain him without an opportunity for bond redetermination.

3.    Petitioner has been subjected to prolonged detention that far exceeds the brief period constitutionally permitted to facilitate removal. See *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Demore v. Kim*, 538 U.S. 510, 530 (2003). His continued detention no longer serves any legitimate governmental purpose and has become arbitrary and punitive, in violation of the Due Process Clause of the Fifth Amendment.

2

4.      The Immigration Court and the Board of Immigration Appeals have expressly disclaimed jurisdiction to review or redetermine custody in light of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that Immigration Judges lack authority to conduct bond hearings for individuals charged removable under certain provisions of the Immigration and Nationality Act. As a result, Petitioner is left without an adequate or available administrative remedy, and only this Honorable Court possesses jurisdiction under 28 U.S.C. § 2241 to review the legality of his continued detention and to grant appropriate relief. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 314, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (recognizing federal habeas jurisdiction where no other judicial forum is available to test the legality of executive detention).

5.      Petitioner is an asylum applicant who has been in the United States since September 15, 2022, when he entered near El Paso, Texas, and was paroled pursuant to INA §212(d)(5). He currently has a pending application for asylum and withholding of removal before the Immigration Court. Further, Petitioner sustained a serious workplace injury in 2023 that has left him with long-term physical limitations, and he has a pending civil suit related to that incident before the New York State Supreme Court. He has consistently complied with his legal obligations, including attending hearings related to both his immigration case and his injury claim. Petitioner has no criminal history and must remain lawfully present in the United States to complete adjudication of his meritorious claims for relief and to continue his medical recovery.

6.      Due to the Immigration Court's expected disclaiming of jurisdiction to review or redetermine custody in light of *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), Petitioner is left without an adequate or available administrative remedy, and only this Honorable Court possesses jurisdiction under 28 U.S.C. § 2241 to review the legality of his continued detention and to grant appropriate relief. See *INS v. St. Cyr*, 533 U.S. 289, 314 (2001)

3

(recognizing federal habeas jurisdiction where no other judicial forum is available to test the legality of executive detention).

## I. PARTIES

7.      Francisco Antonio Donaye-Contreras ("Mr. Donaye") is a native and citizen of Venezuela who fled his country due to political repression, economic collapse, and threats from criminal groups and state actors. He entered the United States on September 15, 2022, near El Paso, Texas, and was paroled pursuant to INA §212(d)(5). He is currently detained at the Buffalo Federal Detention Facility, 4250 Federal Drive, Batavia, NY 14020. Mr. Donaye has a pending asylum and withholding of removal application, has complied with all legal obligations, and has no criminal history.

8.      Respondent, Kristi Noem, is the Secretary of the U.S. Department of Homeland Security ("DHS"), the federal agency responsible for enforcing Petitioner's arrest, detention and removal.  Respondent Noem's address is 2707 Martin Luther King Jr. Ave, SE Washington, DC 20528-0485.

9.      Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to section 103(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1103(g). She routinely transacts business in the Western District of New York, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and as such, is the legal custodian of Petitioner.  Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

10.     Respondent, Thomas Feeley, is the Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Buffalo Federal Detention Facility. He is the local ICE official who has immediate authority over the Petitioner. Respondent Feeley's address is 4250 Federal Drive, Batavia, NY 14020.

11.     Respondent, Joseph B. Edlow, is the Director of U.S. Citizenship and Immigration Services, the federal agency responsible for adjudicating Petitioner's asylum application. His official address is 5900 Capital Gateway Drive, Mail Stop 2120, Camp Springs, Maryland 20588-0009.

12.     Respondent, The GEO Group, Inc., is the private contractor operating the Buffalo Federal Detention Facility, where Petitioner is being held. They are the custodian of Petitioner and are named in their official capacity. Their address is 4250 Federal Drive, Batavia, New York 14020.

## II. JURISDICTION & VENUE

13.     The Court has jurisdiction under the Suspension Clause. The Suspension Clause provides, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I § 9, cl. 2. This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. §§ 2241 *et seq.*, as protected under Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause), and federal question jurisdiction under 28 U.S.C. § 1331. This case arises under the United States Constitution; the INA, 8 U.S.C. §§ 1101 *et seq.*; the APA, 5 USC §§ 701 *et seq.*; the Due Process Clause of the Fifth Amendment and the Fourth Amendment.  Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[] on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *See Hensley,* 411

5

U.S. at 351 (1973); 28 U.S.C. § 2241(c)(3). Petitioner is also subject to prolonged physical detention.

14.     While the courts of appeals have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252, federal district courts have jurisdiction under 28 U.S.C. § 2241(d) to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of Respondents' conduct.  *See Demore v. Kim*, 538 U.S. 510, 516–517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). No Supreme Court or Second Circuit precedent applicable to immigration detainees, nor the habeas statute, indicate that venue is not proper in the United States District Court for the Western District of New York. See 28 U.S.C. § 2241. Venue is proper in the Western District of New York because a substantial part of the events and omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(2). Petitioner is currently being held at the Buffalo Federal Detention Facility, located at 4250 Federal Drive, Batavia, New York 14020.

### III. FACTS GIVING RISE TO THE HABEAS PETITION

15.     Petitioner, Mr. Francisco Antonio Donaye-Contreras, is currently in removal proceedings at the Buffalo Immigration Court. A Notice to Appear initiating these proceedings was issued on October 29, 2025 (*see* **Exhibit "A"**), which charges the Petitioner with inadmissibility pursuant to §212(a)(6)(A)(i) of the Immigration Nationality Act, as "[an] alien present in the United States without being admitted or paroled…". Petitioner is scheduled for a master calendar hearing on his Application for Asylum and Withholding of Removal.

16.     Petitioner is a citizen of Venezuela (*see* **Exhibit "B"**) and fled his country due to escalating political repression, economic collapse, and direct threats from criminal groups and state actors. He was subjected to harassment, surveillance, and threats, leaving him extremely

vulnerable. These conditions compelled him to leave Venezuela and seek protection in the United States. Petitioner is actively pursuing relief through his pending asylum and withholding of removal application before the Immigration Court (*see* **Exhibit "C"**).

17.    Petitioner entered the United States on September 15, 2022, near El Paso, Texas, and was paroled pursuant to INA §212(d)(5) (*see* **Exhibit "D").** He has complied with all conditions of parole and has consistently attended his immigration hearings. In 2023, while employed in construction, Petitioner sustained a serious workplace injury when a heavy load fell on him, causing fractures to his ankle and knee and long-term physical limitations (*see* **Exhibit "E").** He filed a civil suit related to the incident, which remains pending before the New York State Supreme Court, and he has attended all hearings in good faith. His ongoing medical needs require rehabilitation and care that cannot be adequately provided in detention. His attorney in that matter, Mark E. Freud, has affirmed the information regarding his suit, injuries, and nature of the action that is pending in the New York Supreme Court. (*See* **Exhibit "F")**.

18.    On or about November 10, 2025, Petitioner sought custody redetermination before the Immigration Court. Although no decision has been made on the motion, the Immigration Judge is expected to deny relief because the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), conclusively holds that Immigration Judges lack jurisdiction to make custody or bond determinations for individuals charged under § 236(a) of the INA. Given this binding precedent, any further pursuit of administrative custody review is futile, as the agency lacks authority to provide the requested relief. Accordingly, no adequate or available administrative remedy exists to challenge Petitioner's ongoing detention.

19.    Furthermore, Form I-213, Record of Deportable/Inadmissible Alien, confirms that Petitioner does not possess any criminal history. The record also reflects that he was taken into custody during a routine ICE check-in, not as a result of any criminal conduct. This documentation further supports that Petitioner's detention is unrelated to public safety concerns and underscores his eligibility for release.(*see* **Exhibit "G"**).

20.    Petitioner remains in ICE custody despite having a viable claim for asylum and withholding of removal, significant medical needs, and substantial equities that warrant release. He has no criminal history, has complied with all legal obligations, and has demonstrated good moral character. Petitioner has submitted letters of support attesting to his moral character from United States citizens and lawful permanent residents, as well as documentation from the attorney handling his workplace injury case (*See* **Exhibit "H").** His continued detention without a bond hearing violates his constitutional rights and imposes undue hardship on his ability to recover physically.

### IV.      REQUIREMENTS OF 28 U.S.C. § 2243

21.    The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id.

22.    Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), *overruled by Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and *abrogated by Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (emphasis

added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## V.    APPLICABLE LAW

**A. The Government Is Detaining Petitioner Under the Wrong Statutory Provision and Lacks Authority to Hold Him Under 8 U.S.C. § 1225(b)(2)(A).**

23.    The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.  First, 8 U.S.C. § 1226 governs the arrest and detention of individuals placed in ordinary removal proceedings before an IJ pursuant to 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are subject to discretionary civil detention and are generally entitled to a bond hearing, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, provided they cannot show an exception. *See* 8 U.S.C. § 1226(c).

24.    Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2). Third, 8 U.S.C. § 1231(a)-(b) governs detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)-(b).

25.    This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

26.    The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. § 1226(a)

was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

27.     Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323.

28.     Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

29.     On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

30.     The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

31.     On September 5, 2025, the BIA adopted this same position in a published

decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the

United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are

ineligible for IJ bond hearings. However, *Matter of Yajure Hurtado* does not hold that

Immigration Judges lack bond jurisdiction under § 236(a)(1) as a general matter; rather, it

reclassifies all individuals who entered without inspection as "applicants for admission" and

places them within § 235(b)(2)'s mandatory detention scheme, which contains no bond authority.

Because the Board treats such individuals as falling under § 235(b)(2), it concludes they cannot

seek bond, since the section itself provides no mechanism for bond hearings.

32.     Since Respondents adopted their new policies, dozens of federal courts have

rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected

*Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

33.     Even before ICE or the BIA introduced these nationwide policies, IJs in the

Tacoma, Washington, immigration court stopped providing bond hearings for persons who

entered the United States without inspection and who have since resided here. There, the U.S.

District Court in the Western District of Washington found that such a reading of the INA is

likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not

apprehended upon arrival to the United States. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239

(W.D. Wash. 2025).

34.     Subsequently, court after court has adopted the same reading of the INA's

detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*,

No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*,

No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025);

*Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

35.      In addition to the many courts nationwide that have rejected DHS's and EOIR's

new theory of retroactively treating long-term residents as "arriving aliens," courts within the

Second Circuit, including the Western District of New York, have reached the same conclusion.

Most notably, in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Second Circuit

confirmed that individuals arrested in the interior after having lived in the United States for years

are detained under 8 U.S.C. § 1226(a), not § 1225(b), and are entitled to individualized custody

determinations with the Government bearing the burden of justifying continued detention. Courts

in the Western District of New York have repeatedly applied *Velasco Lopez* and rejected the

Government's attempts to expand mandatory-detention categories or to premise detention

authority on retroactive theories inconsistent with the statute. See, e.g., *Cabral v. Decker*, 331 F.

Supp. 3d 255, 261–63 (W.D.N.Y. 2018) (holding that DHS may not rely on an incorrect

statutory basis for detention and emphasizing that § 1226(a) governs individuals apprehended in

the interior); *Kaba v. Barr*, 403 F. Supp. 3d 180, 187–88 (W.D.N.Y. 2019) (rejecting

government's effort to apply mandatory-detention provisions where the statutory prerequisites

were not met and noting that detention authority turns on "the statute Congress actually enacted,

not DHS's reclassification"); *Hemans v. Searls*, 2019 WL 955353, at *6 (W.D.N.Y. Feb. 27,

2019) (same). These WDNY decisions collectively reaffirm that DHS cannot label a noncitizen

as an "arriving alien" to impose § 1225(b) detention when the individual was apprehended inside

the United States long after entry. Courts throughout this Circuit consistently recognize that

noncitizens physically present in the interior, whether initially admitted without inspection or

not, cannot be retroactively converted into "arriving aliens" to trigger § 1225(b)(2)(A).

Accordingly, both the statutory text and binding Second Circuit authority demonstrate that

Petitioner is properly detained, if at all, under § 1226(a), and DHS cannot lawfully apply §

1225(b)(2)(A) to an individual who entered years ago and was apprehended inside the United States. Because DHS initially and improperly classified Petitioner under § 1226, it cannot now retroactively reclassify him under § 1225(b)(2)(A) to cure that jurisdictional defect; accordingly, his present detention is unlawful and he must be released immediately.

36.    Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

37.    Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a [noncitizen]."

38.    The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at *7.

39.    Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

40.    By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at

the border of people who are "seeking admission" to the United States. 8 U.S.C. §1225(b)(2)(A).
Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the
Nation's borders and ports of entry, where the Government must determine whether a
[noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281,
287 (2018).

41.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not
apply to people like Petitioner, who have already entered and were residing in the United States
at the time they were apprehended.

### B. Petitioner's Continued Detention Violates the Fifth Amendment's Due Process Clause

42.     The Due Process Clause applies to all persons in the United States, "whether their
presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. at 693;
*see also Yick Wo v. Hopkins*, 118 U.S. 356 (1886). The Supreme Court declared "that the Due
Process Clause protects individuals against two types of government action" giving rise to
distinct claims of substantive and procedural due process violations. *United States v. Salerno,*
481 U.S. 739, 746 (1987). Thus, "the touchstone of due process is protection of the individual
against arbitrary action of government … whether the fault lies in the denial of fundamental due
process fairness [procedural due process] … or in the exercise of power without any reasonable
justification in the service of a legitimate government objective [substantive due process]…"
*City of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citations and internal quotations omitted).

43.     Procedural due process constrains governmental decisions that deprive individuals
of property or liberty interests within the meaning of the Due Process Clause of the Fifth

Amendment. *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived, and a right to meaningful process afforded at a meaningful time. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "'Substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,'… or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746. (internal citations omitted).

44.     Respondents' power to detain and deport someone is not limitless, nor is it shielded from judicial review. *See Calderon v. Sessions,* 330 F. Supp. 3d 944, 950 (S.D.N.Y. 2018) *appeal withdrawn sub nom. Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018) (ordering a stay of removal and release from detention to permit the Petitioner to continue with the provisional waiver process afforded by the government); *You Xiu Qing v. Nielsen*, 321 F.Supp.3d 451 (S.D.N.Y. 2018) (ordering a stay of removal and release from detention to permit the Petitioner to continue with the provisional waiver process and a motion to reopen);  *S.N.C. v. Sessions,* No. 18 2018 WL 6175902, (S.D.N.Y. Nov. 26, 2018); *Compere v. Nielsen*, 2019 WL 332193, at *9 (D.N.H. Jan. 24, 2019) (granting a stay of removal for petitioner because deportation to Haiti would vitiate his ability to pursue an appeal to the BIA of the IJ's denial for a motion to reopen); *Lin v. Nielsen*, 2019 WL 1958569 at *15 (D. Md. May 2, 2019) (court found that a preliminary injunction was "in the public interest, as it requires DHS to comport with its own rules and regulations, and bars arbitrary and capricious action towards vulnerable undocumented immigrants."); *see also Martinez v. Neilsen*, 341 F.Supp.3d 400 (D.N.J. Sept. 14, 2018); *Fatty v. Nielsen*, 2018 WL 3491278 at *2 (W.D. Wash. Jul. 20, 2018);

*Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 933-35 (W.D. Tex. 2018); *Jimenez v. Nielsen*,

No. CV 18-10225-MLW, 2018 WL 4539687 (D. Mass. Sept. 21, 2018); *Sied v. Nielsen*, 2018

WL 1142202 (N.D. Cal. Mar. 2, 2018); *Ragbir v. Sessions*, 2018 WL 623557 (S.D.N.Y. Jan. 29,

2018); *Ibrahim v. Acosta*, No. 17-CV-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018);

*Chhoeun v. Marin*, 306 F. Supp. 3d 1147 (C.D. Cal. 2018); *Rombot v. Souza*, 296 F. Supp. 3d

383 (D. Mass. 2017).

      45.    "Habeas corpus is at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298,

319 (1995). Judges have "broad discretion" to fashion an appropriate remedy. It may extend

beyond simply ordering the release of a petitioner, *Carafas v. La Vallee*, 391 U.S. 234 (1968),

and is to "be administered with the initiative and flexibility essential to ensure that miscarriages

of justices within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291

(1969). Habeas corpus "never has been a static, narrow, formalistic remedy; its scope has been

to achieve its grand purpose - the protection of individuals against erosion of their right to be free

from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). At

its historical core, habeas corpus "has served as a means of reviewing the legality of Executive

detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542

U.S. 466, 474 (2004) (citations omitted). These protections extend fully to noncitizens subject to

an order of removal. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Martinez v,

McAleenan*, 385 F.Supp.3d 349, 355 ("Due to its talismanic significance in protecting individual

liberty from unlawful detention, habeas corpus is fundamentally governed by equity. The

Supreme Court has granted the writ when justice has so required.") (citing *Munaf v. Grren*, 128

S.Ct. 2207 (2008) and *Carafas v. LaVallee*, 392 U.S. 234 (1968)). The Supreme Court has noted

the writ's "scope and flexibility--its capacity to reach all manner of illegal detention--its ability

to cut through barriers of form and procedural mazes." *Harris*, 394 U.S. at 291.

46.     Furthermore, in *Demore,* the Supreme Court held that mandatory detention under

§ 1226(c) was not unconstitutional on its face, but limited its holding to a brief period of

detention, stating "Congress, justifiably concerned that deportable criminal aliens who are not

detained continue to engage in crime and fail to appear for their removal hearings in large

numbers, may require that persons such as respondent be detained for *the brief period* necessary

for their removal proceedings." 538 U.S. at 513 (emphasis added). The Court described the "brief

period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003

"lasts for less than ... 90 days." *Id.* at 529.

47.     Even if the government were correct in placing Petitioner under § 1225(b),

*Demore* expressly applies only to § 1226(c) detainees and is limited to brief, finite detention; it

does not authorize indefinite, pre-hearing detention of long-term residents arrested years or

decades after entry.

48.     In the present case, there is no indication that Petitioner's detention is temporary

or limited to a brief period necessary to effectuate removal. To the contrary, Petitioner has been

subjected to prolonged detention that may continue for an indefinite period, potentially extending

for years. Petitioner has actively pursued relief from removal through multiple avenues,

including the filing of an Application for Asylum and Withholding of Removal before the

Immigration Court and previously before the United States Citizenship and Immigration Services

("USCIS"). This application reflects his eligibility for lawful relief under the Immigration and

Nationality Act and demonstrate his significant ties to the United States. His pending suit

regarding his 2023 accident under the Labor Law also requires him to remain in the United

Stastes. In addition, Petitioner's removal would severely disrupt his ongoing civil litigation arising from a workplace injury and prevent him from obtaining necessary medical treatment, thereby compounding the hardship he faces.

C. **Respondents' Conduct Violates the Administrative Procedure Act (5 U.S.C. §§ 701–706).**

49.     Respondents' actions further violate the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, because the decision to detain Petitioner under 8 U.S.C. § 1225(b)(2)(A)— despite his undisputed status as a long-term interior resident placed in removal proceedings under § 240—constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law. See 5 U.S.C. § 706(2)(A), (C). DHS's retroactive reclassification of Petitioner as an "arriving alien" for the sole purpose of placing him in mandatory detention represents a fundamental departure from decades of consistent agency practice and violates the statutory framework Congress enacted. Such reclassification is not the product of reasoned decision-making, is unsupported by the INA's text, structure, or purpose, and reflects an unexplained and irrational policy shift lacking any contemporaneous justification.

50.     The APA forbids agencies from acting in a manner that is "arbitrary, capricious, [or] an abuse of discretion," especially where, as here, an agency's deviation from settled practice imposes severe restraints on liberty. DHS's application of § 1225(b)(2)(A) to Petitioner is arbitrary and contrary to law because that provision governs recent entrants applying for admission at or near the border, not individuals like Petitioner who have lived in the United States for decades and are charged with inadmissibility under § 212(a)(6)(A)(i) in full § 240 proceedings. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (explaining § 1225(b)

applies at ports of entry). Respondents' reclassification policy also constitutes final agency

action reviewable under the APA because it determines Petitioner's custodial status, imposes

mandatory detention with no administrative process for review, and marks the consummation of

the agency's decision-making process as applied to him.

51.     Accordingly, Respondents' detention of Petitioner under § 1225(b)(2)(A) must be

set aside under 5 U.S.C. § 706(2) as unlawful agency action taken "in excess of statutory

jurisdiction" and "without observance of procedure required by law," and this Court should order

his immediate release.

## VI.     CLAIMS FOR RELIEF

### Count I

### Habeas Corpus Under 28 U.S.C. § 2241 (Unlawful Executive Detention)

52.     Petitioner is being unlawfully detained in violation of 28 U.S.C. § 2241 because

DHS has placed him under 8 U.S.C. § 1225(b)(2)(A), a statutory provision that does not

authorize his detention as a long-term interior resident apprehended decades after entry and

placed in full removal proceedings under 8 U.S.C. § 1229a. His continued detention is

unauthorized, exceeds the scope of statutory jurisdiction, and is not reasonably related to any

legitimate removal purpose, rendering it unconstitutional and unlawful.

### Count II

### Violation of the Fifth Amendment (Substantive and Procedural Due Process)

53.     Respondents' detention of Petitioner violates the Fifth Amendment by subjecting

him to prolonged, mandatory, and unreviewable incarceration without an individualized custody

determination. The absence of any opportunity to be heard, the government's refusal to consider

less restrictive alternatives, and the arbitrary reclassification of Petitioner as subject to §

1225(b)(2)(A) constitute both procedural and substantive due process violations.

## Count III

### Violation of the INA and Administrative Procedure Act (5 U.S.C. §§ 701–706)

54.     Respondents' application of § 1225(b)(2)(A) to Petitioner constitutes final agency

action that is arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of 5

U.S.C. § 706(2)(A), (C). DHS's unexplained and retroactive reinterpretation of the detention

statutes, reclassifying long-term interior residents as "arriving aliens", is inconsistent with

decades of agency practice, unsupported by statutory text, and results in unlawful mandatory

detention. This action exceeds statutory authority and must be set aside under the APA.

## Count IV

### Violation of the Suspension Clause (U.S. Const. Art. I § 9, cl. 2)

55.     By eliminating any administrative review of custody and foreclosing access to an

Immigration Judge, Respondents have suspended the privilege of the writ of habeas corpus as

applied to Petitioner. The government's reinterpretation of § 1225(b)(2)(A) prevents Petitioner

from obtaining judicial review of the legality of his detention anywhere except this Court. The

Suspension Clause prohibits such restrictions on habeas jurisdiction.

## VII.    REQUEST FOR RELIEF

56.     Pending the adjudication of this Petition, Petitioner respectfully requests that the

Court use its authority under 28 U.S.C. §2243 to order the Respondents to file a return within

three days, unless they can show good cause for additional time. *See* 28 U.S.C. §2243.  (Order to

show cause why a petition for a writ of habeas corpus should not be granted should be "returned

within three days unless for good cause additional time, not exceeding twenty days, is allowed").

57.     Petitioner respectfully requests that Respondents be restrained from removing him from the United States pending adjudication of his removal proceedings. Premature removal would preclude him from pursuing the forms of relief for which he is eligible and would undermine his ability to seek protection under applicable immigration laws.

58.     Furthermore, Petitioner respectfully requests to be released from detention pending resolution of his immigration proceedings. He has been subjected to prolonged detention despite having a bona fide Application for Asylum and Withholding of Removal currently pending before the Immigration Court. Continued detention imposes significant hardship, deprives him of access to necessary medical treatment for his workplace injury, interferes with his ability to pursue his ongoing civil litigation, and undermines his capacity to meaningfully prepare and present his claims for relief.

## VIII.   EXHAUSTION OF REMEDIES

59.     Petitioner's claims regarding the constitutionally inadequate process and unlawful deprivation of liberty are not subject to any statutory requirement of administrative exhaustion. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). To the extent that prudential concerns might lead the Court to consider exhaustion as a discretionary matter, Petitioner has taken all reasonable steps available to him within the administrative framework.

60.     Petitioner is currently in removal proceedings before the Immigration Court and is represented by counsel. He intends to proceed on his Applications for Asylum and Withholding of Removal before the Immigration Court. This application for relief remains pending, and no final order of removal has been issued.

61.     Moreover, neither the Immigration Judge nor the Board of Immigration Appeals has jurisdiction to adjudicate the constitutional claims raised in this habeas petition. These claims fall squarely within the purview of this Court.

62.     Finally, Petitioner faces irreparable harm in the form of continued detention, psychological trauma, and the risk of premature removal before he can pursue the legal remedies available to him. Respondents have the authority to parole Petitioner under 8 C.F.R. §§ 235.3(b)(2)(iii), 1235.3(b)(2)(iii), yet have declined to do so despite his eligibility and humanitarian circumstances. Further, because the administrative process offers no meaningful opportunity for relief due to the recent holding of the Board of Immigration Appeals in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025), exhaustion of remedies is not required. *See McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992) (exhaustion excused where administrative remedies are inadequate or futile); *INS v. St. Cyr*, 533 U.S. 289, 314 (2001).

## IX.     REQUEST FOR ORAL ARGUMENT

63.     Petitioner respectfully requests oral argument on this Petition.

## X.     PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1.     Assume jurisdiction over this matter;

2.     Issue a Writ of Habeas Corpus on the ground that Petitioner's continued detention violates the Due Process Clause and order Petitioner's immediate release;

3.     In the alternative, issue injunctive relief ordering Respondents to immediately release Petitioner on the ground that his continued detention violates the Due Process Clause;

4.     Enjoin Respondents from removing Petitioner from the United States;

5.     Order Respondents file a return within three days pursuant to 28 U.S.C. § 2243.

6.      Declare that the process as applied to Petitioner by Respondents violates the Suspension Clause, the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the INA, the APA, and federal regulations;

7.      Issue a writ of habeas corpus directing Respondents to pursue a constitutionally adequate process to justify adverse immigration actions against Petitioner;

8.      Order Respondents to provide five days of notice to the Court and Petitioner of his imminent removal;

9.      Order Respondents to comply with all applicable rules, regulations, laws, and constitutional protections in relation to Petitioner's pending removal proceedings and his Applications for Asylum and Withholding of Removal before the Immigration Court.

10.     Award Petitioner his costs and reasonable attorney's fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes;

11.     Grant such further relief as the Court deems just and proper.

Dated: November 26, 2025

Respectfully submitted,


By: _____

Andrea C. Soto, Esq.
Soto Law, PLLC
445 Hamilton Avenue, Suite 407
T : 914-290-4900 / F: 914-898-9100
asoto@andreasotolaw.com

24

VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have discussed with the Petitioner the events described in this Petition. On the basis of those discussions, on information and belief, I hereby verify that the factual statements made in the attached Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief are true and correct to the best of my knowledge.

Dated:  White Plains, NY

November 26, 2025

Respectfully submitted,

By: _____

Andrea C. Soto, Esq.
Soto Law, PLLC
445 Hamilton Avenue, Suite 407
T : 914-290-4900 / F: 914-898-9100
asoto@andreasotolaw.com